# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____ :
                                :

|  |  |  |
|---|---|---|
| CBA ENVIRONMENTAL SERVICES, INC., | : | Civil Action No.:3:18-cv-13294-FLW-DEA |
|  | : |  |
| Plaintiff, | : | **OPINION** |
|  | : |  |
| vs. | : |  |
|  | : |  |
|  | : |  |
| TOLL BROTHERS INC.; ENTERPRISE NETWORK RESOLUTIONS CONTRACTING, LLC; TALOR WISEMAN & TAYLOR; FIRST ENVIRONMENT, INC., | : |  |
|  | : |  |
| Defendants. | : |  |

_____:

## WOLFSON, Chief Judge:

Presently before the Court are two motions in this patent infringement action: (1) Defendants Toll Brothers ("Toll Bros."), Enterprise Network Resolution Contracting, LLC ("ENRC"), Taylor Wiseman & Taylor ("TWT"), and First Environment, Inc.'s ("First Environment") Motion to Dismiss,[1] and (2) Plaintiff CBA Environmental Services, Inc.'s ("CBA") Motion for Leave to Amend the Complaint. The Court has considered the moving, opposition, and reply papers, and for the reasons set forth herein, Defendants' Motion to Dismiss is GRANTED and Plaintiff's Motion for Leave to Amend the Complaint, as set forth in the Proposed

_____

[1] Only Toll Bros. filed a formal motion to dismiss, which ENRC, TWT, and First Environment all joined.

1

Amended Complaint, is DENIED. Plaintiff is given leave to amend its Complaint consistent with this Opinion within 30 days from the date of the Order accompanying this Opinion.

## I.  Factual Background and Procedural History

Plaintiff CBA is a soil remediation services provider that is owner by assignment of United States Patent No. 7,001,105 ("the '105 patent"). Original Compl. ¶¶ 11–12. The '105 patent, issued on February 21, 2006, relates to an *in situ* method of reducing concentrations of contaminates in soil to environmentally acceptable levels. *Id.* at ¶¶ 12, 15. Similar to its original Complaint, CBA's Proposed Amended Complaint[2] ("PAC") alleges that, in or about 2014, Toll Bros., a home construction company that specializes in building luxury homes, purchased the High Mountain Golf Club in Franklin Lakes, New Jersey ("High Mountain") for the development of luxury homes, and, in or about 2017, purchased property at the Apple Ridge Golf Course, in Mahwah, New Jersey ( "Apple Ridge"), also for the development of luxury homes. PAC at ¶¶ 29, 32-33. At the time, the ground soil at both sites was allegedly contaminated with various contaminants. *Id.* As a result of this contamination, Toll Bros. purportedly hired TWT, a professional engineering services firm, to serve as a Licensed Site Remediation Professional ("LSRP") to

---

[2] In ruling on these motions, the Court will consider those allegations in the Proposed Amended Complaint to determine whether Plaintiff can state a claim against Defendants, particularly since many of Plaintiff's proposed amendments are responsive to Defendants' arguments in their motion to dismiss.

oversee and direct soil remediation activities at Apple Ridge and High Mountain. *Id.* at ¶¶ 30, 35.

In early April 2016, Toll Bros. requested that CBA provide it with proposals for soil remediation at Apple Ridge and High Mountain, and, on May 19, 2016, CBA submitted to Toll Bros. formal written proposals for the two sites. *Id.* at ¶¶ 36, 41. At that point, Plaintiff alleges that, despite knowing that CBA's proposed soil remediation methods were patented, Toll Bros. thereafter solicited and received a competing soil remediation proposal from ENRC. *Id.* at ¶ 42. Plaintiff also alleges that Toll Bros. and/or TWT at some point retained First Environment, an environmental engineering and consulting firm, to provide services in connection with the allegedly infringing soil remediation at least at High Mountain. *Id.* at ¶¶ 31, 45. On October 27, 2016, an individual, at the direction of CBA, visited High Mountain to investigate. *Id.* at ¶ 44.  While there, the individual allegedly observed ENRC performing soil remediation and using equipment and methods that allegedly infringed on the '105 patent. *Id.* On December 19, 2016, Toll Bros. modified the original blending plan for Apple Ridge and, on December 19, 2016, a Toll Bros. executive requested by email that CBA provide it with a revised proposal based on the newly revised plan, which CBA did submit on December 21, 2016. *Id.* at ¶¶ 46-47. Months later, in May 2017, CBA learned that Toll Bros. had awarded ENRC the contract to conduct the soil remediation at Apple Ridge using methods that allegedly infringed on the '105 patent. *Id.* at ¶ 50.

According to the PAC, Toll Bros., TWT and First Environment worked together to develop remediation and other development plans, to hire subcontractors and other engineering firms to assist with various tasks at Apple Ridge and High Mountain, and directed and/or controlled all soil remediation efforts at Apple Ridge and High Mountain, including directing and/or controlling of ENRC in performing the soil remediation methods that allegedly infringed on the '105 patent. *Id.* at ¶ 57. Based on this theory, the PAC asserts one count of direct infringement against ENRC, one count of joint infringement against ENRC, TWT, First Environment, and Toll Bros.,[3] and three individual counts of induced infringement against Toll Bros., TWT, and First Environment, respectively. *See generally* PAC.

CBA filed the instant action for patent infringement of the '105 patent against Defendants on August 28, 2018. *See* Dkt. No. 1. On November 30, 2018, Toll Bros. filed a Motion to Dismiss CBA's Complaint. *See* Dkt. No. 29. Shortly thereafter, Defendants TWT, ENRC, and First Environment, separately moved to join Toll Bros.' pending Motion to Dismiss. *See* Dkt Nos. 31, 33, 34. In response, on January 28, 2019, CBA filed a Motion for Leave to File a First Amended Complaint and to Deny Defendant Tolls Bros.' Motion to Dismiss as Moot or, in the Alternative, to Reset the Briefing Schedule for the Motion to Dismiss. *See* Dkt. No.

---

[3] Joint infringement is merely a type of direct infringement; hereinafter, to avoid confusion, the Court will refer to Plaintiff's direct infringement claim as "single-actor direct infringement" and its joint infringement claim as "joint-direct infringement."

41.  Defendants' Motion to Dismiss and Opposition to Plaintiff's Leave to Amend argue the same two primary defects in CBA's theories of liability: (i) the asserted '105 patent claims are invalid for being directed to an abstract idea under 35 U.S.C. § 101, and (ii) the Complaint does not allege sufficient facts setting forth a cause of action for any patent infringement theories under Fed. R. Civ. P. 8.

## II.    Standard of Review

When considering a motion to amend, "[t]he Supreme Court has instructed that although 'the grant or denial of an opportunity to amend is within the discretion of the District Court, ... outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules.' " *Shane v. Fouver,* 213 F.3d 113, 115 (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Nonetheless, a court may deny a plaintiff leave to amend for a variety of reasons, including undue delay, bad faith, dilatory motive, prejudice and futility. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997); *Alston v. Parker,* 363 F.3d 229, 235 (3d Cir.2004). Under Third Circuit precedent, a "futile" amendment is one that fails to state a claim upon which relief could be granted. *Burlington,* 114 F.3d at 1434; *Grayson v. Mayview* State Hospital, 293 F.3d 103, 113 (3d Cir.2002). Thus, in determining whether a complaint, as amended, is futile, the District Court must apply the sufficiency standard set forth under Rule 12(b)(6). *Shane,* 213 F.3d at 115.

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of*

*Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotations and brackets omitted).

### III. Patent-Eligibility

The PAC alleges infringement of at least Claims 1, 6, and 7 of the '105 patent, all of which Defendants contend are not patent eligible. PAC at ¶ 61, 68. As a preliminary issue, Defendants argue that Claim 1 is representative of all claims of the patent for the purposes of their motion to dismiss under § 101. Although the statutory presumption of validity requires proving invalidity of each claim by clear and convincing evidence, *see Dana Corp. v. Am. Axle & Mfg.*, Inc., 279 F.3d 1372, 1376 (Fed. Cir. 2002), "[c]ourts may treat a claim as representative if the

patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if parties agree to treat a claim as representative." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). For the purposes of this motion, I find that Claim 1 is representative of all claims. CBA has not identified sufficient reasons why other claims would not be fairly represented by Claim 1 for the purposes of the § 101 challenge. For instance, although Claims 6 and 7 contain additional claim limitations not found in Claim 1, those limitations are inconsequential since they are not argued as containing additional inventive concepts, or adding any distinguishing feature that could impact the overall § 101 analysis.

Representative Claim 1 of the '105 patent recites:

1. An in situ method of reducing the concentration of a contaminate in soil to or below a target concentration that is deemed environmentally acceptable in an area in which the contaminant concentration in a surface layer of the soil exceeds the target concentration, the method comprising the steps of:
    Determining a requisite volume of clean soil in vertical proximity to the surface layer such that blending the soil in the surface layer with the requisite volume of clean soil results in a substantially uniform contaminant concentration in the blended soil that is at or below the target;
    Employing a mobile trencher apparatus modified to lift and churn soil in place to a depth of at least four feet to vertically mix the surface layer soil in the area with the requisite volume of clean soil in vertical proximity;
    Running the mobile blending apparatus through the area under conditions to provide sufficient time for the mobile blending apparatus to blend the mixed soils so that the contaminate concentration throughout the blended soil is substantially uniform.

'105 patent at 7:18-38.

## A. Eligibility for Patent Protection

Section 101 of the Patent Act establishes four categories of subject matter eligible for patent protection. 35 U.S.C. §101. Under that section, "[w]hoever invents or discovers any new or useful process, machine, manufacture, or composition of matter, or any new useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." *Id.* This provision is subject to longstanding judicial exceptions, which provide that "'laws of nature, natural phenomena, and abstract ideas' are not patentable." *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 566 U.S. 66, 70 (2012). "Phenomena of nature, . . . mental processes, and abstract intellectual concepts are not patentable, as they are basic tools of scientific and technological work." *Id.* at 71 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972). The rationale underlying these exceptions is "one of pre-emption" grounded on the "'concern that patent law not inhibit further discovery by improperly tying up the future use of' . . . building blocks of human ingenuity." *Alice Corp. Pty. Ltd. v. CLS Bank, Int'l*, 573 U.S. 208, 216 (2014) (citing *Mayo*, 566 U.S. at 85). The Supreme Court, however, has cautioned that "we tread carefully in construing this exclusionary principle, lest it swallow all of patent law" because "[a]t some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* at 217.

The Supreme Court has articulated a two-part test to determine if patent claims are invalid and unpatentable under 35 U.S.C. §101.[4] *See Mayo*, 566 U.S. at 77–78; *see also Alice*, 573 U.S. at 217. The first step in the analysis is a determination as to whether claims are directed to a patent-ineligible concept. *See Alice*, 573 U.S. at 217 (citing *Mayo*, 566 U.S. at 77–78). If the claims are directed to a patent ineligible concept, like an abstract idea, the second step in the test determines if the claims contain an "inventive concept." *Id.* To determine this, a court must "consider the elements of each claim both individual and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (citing *Mayo*, 566 U.S. at 78, 79).

"Subject Matter eligibility under §101 may be determined at the Rule 12(b)(6) stage of a case." *ChargePoint, Inc. v. SemaConnect, Inc.*, No. 2018-1739, 2019 U.S. App. LEXIS 9191, at *8 (Fed. Cir. Mar. 28, 2019) (citing *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)). Under 35 U.S.C. § 282, a granted U.S. patent is afforded a statutory presumption of validity. 35 U.S.C. § 282(a) (2019). "The presumption of validity applies to all challenges to patentability, including those under Section 101 and the exceptions thereto." *See*

---

[4] Plaintiff argues that the *Mayo/Alice* test does not apply here because the patent claims in question are not related to software. However, Plaintiff is unable to cite any case law for the proposition that this test applies only to software. Indeed, *Alice* itself does not mandate that the test be applied only to software patents, rather it is generally applied to method-related patents. *See Alice*, 573 F.3d at 217–218.

*CLS Bank Int'l v. Alice Corp. Pty*, 717 F.3d 1269, 1304 (Fed. Cir. 2013). "[A]ny attack on an issued patent based on challenge to the eligibility of the subject matter must be proven by clear and convincing evidence." *Id. See also Berkheimer*, 881 F.3d at 1368. Under this standard, an accused infringer seeking dismissal for patent claim invalidity must establish that the only plausible reading of the claim is that it covers patent ineligible subject matter. *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013).

### B. Step One

At step one of the *Mayo/Alice* inquiry, the court must determine whether the claim in question is "directed to" a patent-ineligible concept. *Alice*, 134 U.S. at 217. The "directed to" inquiry does not merely ask whether claims *involve* a patent-ineligible concept, rather, it considers claims "in light of the specification" and determines whether "their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). In this analysis, the patent specification may be used to assist in understanding "the problem facing the inventor" and what the patent describes as the invention. *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016). However, "when analyzing patent eligibility, reliance on the specification must always yield to the claim language in identifying that focus." *ChargePoint*, 2019 U.S. App. LEXIS 9191, at *8–9). This is because the judicial exceptions to patentability are motivated by concerns of pre-emption, and the claim language

determines the breadth of each claim.  *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 336 U.S. 271, 277 (1949).

At step one, Defendants argue that Claims 1, 6, and 7 of the '105 patent are directed to the abstract idea of dilution and are therefore ineligible for patent protection.  Defendants reason that dilution is abstract because an individual could calculate the end result of the process in his or her mind.  Moreover, Defendants argue that the multiple allegations in CBA's PAC addressing step one of the validity inquiry are conclusory statements of law which cannot overcome a motion to dismiss.

Finally, Defendants cite *Alice* and *Mayo* to explain that when generic machinery is used to effectuate an abstract idea, claims are not rendered patentable.  Defendants maintain that the patent claims and specification in the instant case describe generic machinery, and as such are unpatentable when used to effectuate an abstract idea.  In support of this position, Defendants cite a portion of the specification that states "the term mobile blending apparatus shall also encompass other similar mobile machinery capable of both mixing and blending soil." '105 patent at 4:50-53.  Defendants argue this language, coupled with the fact that the apparatus is characterized by its function, support the conclusion that the machinery is generic.

At this juncture, I find that Defendants have failed to establish by clear and convincing evidence that the only plausible reading of Claims 1, 6 and 7 of the '105 patent is that they are directed to an abstract idea.  To be clear, this is not a

determination of whether the patent claims are ineligible or invalid under § 101, but merely a finding that a summary dismissal on the issue of patent eligibility is inappropriate at this stage.

Defendants are correct in arguing that the elements of Claim 1, outside of the machinery described in the second element, are generally directed to the abstract process of dilution. However, a fair reading of the '105 patent Claim 1 reveals that the patent utilizes specialized machinery, as discussed *infra*, to blend or mix soil. As such, the patent could be directed to the technical improvement of using specialized machinery in order to improve soil blending and mixing in *in situ* remediation process.

Indeed, claims 1, 6, and 7 are not generally directed to the use of *any* soil blending machinery, but are instead directed explicitly to a "mobile trencher apparatus modified to lift and churn soil in place to a depth of at least 4 feet . . . ." '105 patent at 7:30-31. This specific claim language does not itself clearly evince that generic machinery is involved. Rather, the machinery is described with a degree of detail and specificity to indicate that specialized machinery may be involved.

The "Background of the Invention" in the specification further underscores that the claim may describe specialized equipment and be directed to an improvement. This section expressly discloses the problems associated with "conventional machinery." *Id.* at 2:8-42. Augers, bulldozers, power shovels, plows, and harrows are explicitly described as machinery not capable of efficacious

blending of contaminated surface layer of soil with subsurface clean soil. *Id.* In light of these limitations, a "mobile trencher apparatus modified to lift and churn soil in place to a depth of at least 4 feet" is a form of specialized machinery necessary to achieve the tangible soil remediation result. *Id.* at 7:30-31. Indeed, the fact that this type of machinery is touted to be more effective than "conventional machinery" used for the same function, implies that the method may rely on specialized machinery and may be directed to an improvement. If a claim as a whole is directed to a "new and improved technique, for producing a tangible and useful result," the claim "falls squarely outside those categories of inventions that are 'directed to' patent-ineligible concepts." *See Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

Moreover, as CBA suggests, claim language that is subject to differing interpretations is more appropriately resolved during a claim construction phase of litigation. In fact, when a claim construction dispute exists at the Rule 12(b)(6) stage, courts typically proceed by adopting the non-moving party's constructions. *See BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016). "[I]t will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1274-74 (Fed. Cir. 2012). In sum, the language of the claims, as well as the specification's disparagement of conventional machinery, presents an issue as to

whether the machinery is generic, and, therefore, granting dismissal summarily is inappropriate. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016).

### C. Step Two

At the second step of the *Mayo*/*Alice* analysis, a court must determine if the challenged patent claims contain an inventive concept, *see Mayo*, 566 U.S. at 72, by "consider[ing] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (citing *Mayo*, 566 U.S. at 79). Where a claim is directed to an abstract idea, the claim must include "'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Alice*, 573 U.S. at 221 (citing *Mayo*, 566 U.S. at 72). An inventive concept reflects something more than the application of an abstract idea using "well-understood, routine, and conventional activities previously known to the industry." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2359). Additionally, merely reciting the use of generic machinery or claiming an abstract idea while adding the words "apply it" cannot convert a patent-ineligible abstract idea into a patent eligible invention. *Alice*, 134 S. Ct. at 2358.

At step two of the *Mayo*/*Alice* inquiry, Defendants maintain that the claims of the '105 patent lack any inventive concept when considered individually and as an ordered combination. They claim that CBA fabricates a dispute regarding the

presence of an inventive concept with unsupported legal conclusions improperly drawn from the specification, which are inconsistent with what is actually claimed. Lastly, Defendants argue that the PAC contains no concrete, factual allegations drawn from the claims themselves that describe how the invention achieved improvements. Specifically, Defendants maintain that the limitations of the claims describe an aspirational result, require measurement and calculation of data, and mandate the use of generic equipment (described in terms of function). They argue that none of these characteristics add an inventive concept.[5]

I find that Defendants have not established by clear and convincing evidence that the only plausible reading of the claims of the '105 patent is that they do not contain an inventive concept. Again, this is not a determination on whether the claims at issue contain an inventive concept, but rather a finding that, at this pleading stage, there is a factual dispute as to the presence of an inventive concept,

---

[5] Defendant TWT and First Environment argue for the first time in their reply brief that two prior art references establish that various features claimed in the '105 patent are part of the public domain. They claim that the '105 patent claims thus lack an inventive concept. However, the mere fact that something is disclosed in a prior art does not mean it was well-understood, routine, and conventional. *Berkheimer*, 881 F.3d at 1369. While *in-situ* blending of soil may have existed for many years before the patent-in-suit, there is nothing that clearly and convincingly evinces that the mobile trencher apparatus had been conventionally used in the manner or for the purpose described in the claims. Furthermore, TWT's statement of law is largely not supported. To the extent Defendants argue invalidity of the '105 patent by lack of novelty apart from § 101, those arguments are not considered here as they are outside the §101 analysis and a moving party may not raise new issues and present new facts in a reply brief that should have been raised in its initial brief. *Int'l Raw Materials v. Stauffer Chem. Co.*, 978 F.2d 1318, 1327 n.11 (3d Cir. 1992).

and, in that regard, Defendants are unable to show by clear and convincing evidence that all the elements of the '105 patent claims are well-understood, routine, and conventional to a skilled artisan in the relevant field. While patent eligibility is ultimately a question of law, "[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer*, 881 F.3d at 1360.

Although Defendants correctly maintain that the inventive concept must be contained in the claims, they largely ignore that the specification can provide insight into whether an inventive concept is captured by the claims. *See Berkheimer*, 881 F.3d at 1369 ("[t]he improvements in the specification, to the extent they are captured in the claims create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities."); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016) ("The written description is particularly useful in determining what is well-known or conventional."). Indeed, *Berkheimer* demonstrates that non-routine or unconventional improvements described in the specification, and recited in the claims, may defeat motions to dismiss that argue that claims are patent ineligible. *Id.* at 1370.

In the instant case, the "conventional machinery" listed throughout the specification does not expressly include the "mobile trencher apparatus" disclosed by the patentee in the claims of the invention. It is, therefore, plausible, as alleged by CBA, that the modified mobile trencher apparatus in soil remediation was not

conventional, routine, or well-understood prior to the patent—especially as part of the specific process claimed. In short, there is a lack of certainty in the claims and the specification that the use of a modified mobile trencher apparatus used in this method was "undisputedly" well-known or conventional. *C.f. Content Extraction*, 776 F.3d at 1347 (articulating that when elements of the claims were *undisputedly* well-known, there was no inventive concept.) While the fact-finder may ultimately determine that the use of the mobile trencher apparatus was well-understood, routine, and conventional, absent a clear statement to that effect in the claims or specification, such a determination may not be made on a motion to dismiss. *See Nat. Alts. Int'l, Inc. v. Creative Compounds, LLC*, 918 F.3d 1338, 1347 (Fed. Cir. 2019).

Furthermore, for the same reasons laid out in step one of the *Mayo/Alice* analysis, based upon the language of the claims and the specification, there is a factual dispute as to whether the claimed mobile trencher apparatus is generic or specialized machinery. Determination of this factual dispute will ultimately resolve whether use of the machinery in the method is an inventive concept, because claims that merely recite abstract ideas and perform it with generic machinery do not have an inventive concept. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011).

In sum, the improvements in the specification, to the extent they are captured in the claims, present a factual issue regarding whether the invention describes well-understood, routine, and conventional activities. As such, the claims

of the '105 patent at least present a factual issue as to whether the method claims in the '105 patent, provide substantial, technological improvement over conventional soil remediation and blending techniques known to the industry. "[P]atentees who adequately allege their claims contain inventive concepts survive a §101 eligibility analysis under Rule 12(b)(6)." *Aatrix Software*, 882 F.3d at 1126-27. Dismissal at this stage is appropriate "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Id.* at 1125. Accordingly, I cannot find, at this time, that Plaintiff's patent is invalid as abstract.

## IV. Infringement

In their Motion to Dismiss and Opposition to the Motion to Amend, Defendants argue that the PAC fails to set forth any cognizable claim for direct patent infringement against any of the Defendants, whether under a theory that ENRC infringed directly or that all defendants infringed jointly.[6] They also argue that Plaintiff has failed to state a claim for induced infringement. For the following reasons, Defendants' motion to dismiss is granted, and, consequently, Plaintiff's proposed amendments are futile.

### A. Single-Actor Direct Infringement against ENRC

Plaintiff's PAC asserts a claim for single-actor direct infringement against ENRC alone. "Direct infringement under § 271(a) occurs where all steps of a

---

[6] Although ENRC does not independently move to dismiss the direct infringement claim against it, it has joined Toll Bros.'s motion, which argues for dismissal on behalf of all Defendants. *See* ECF No. 29 at 23.

claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) (citing *BMC Res., Inc. v. Paymentech, L.P.,* 498 F.3d 1373, 1379–81 (Fed. Cir. 2007)). This holding "derives from the statute itself, which states 'whoever without authority makes, uses, offers to sell, or sells any patented invention within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.'" *BMC Res., Inc.,* 498 F.3d at 1380 (quoting 35 U.S.C. § 271(a) (2000)).

The required pleading form for an allegation of direct infringement depends on whether or not the suit implicates a theory of joint infringement. *Two-Way Media Ltd v. Verizon Commc'ns Inc.*, No. CV 14-1212, 2015 WL 2375805, at *4 (D. Del. May 18, 2015) (citing *Pragmatus AV, LLC v. Yahoo! Inc.,* No. 11–902, 2012 WL 6044793, at *3 (D.Del. Nov. 13, 2012)). A direct infringement claim *not* implicating a theory of joint infringement, *i.e.* single-actor direct infringement, is required to satisfy only the notice pleading standard comporting to Form 18 of the Appendix of Forms to Fed. R. Civ. P.[7] *Id.* Allegations of direct infringement of a method patent

---

[7] Form 18 itself simply requires:

>  (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent;' (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages.

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012) (quoting *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)).

implicating a theory of joint infringement, *i.e.* joint-direct infringement, however, require more to survive a motion to dismiss. A plaintiff must plead facts sufficient to allow a reasonable inference that various parties perform all of the claimed steps, and that one party exercises the requisite "direction or control," such that performance of every step is attributable to the controlling party. *Id* (citing *Pragmatus,* 2012 WL 6044793, at *4). Although a plaintiff may plead joint-direct infringement and single-actor direct infringement claims in the alternative, a plaintiff must allege facts compatible with both theories of the case. *See Desenberg v. Google, Inc.,* 392 Fed.Appx. 868, 871 (Fed. Cir. 2010) (affirming dismissal of Plaintiff's single-actor direct infringement claim, holding that since the asserted method claim clearly required two actors, a direct infringement theory is not tenable).

Here, Plaintiff's allegations in the PAC clearly implicate only a theory of joint-direct infringement, and, without a viable alternative theory, Plaintiff cannot assert a single-actor direct infringement claim against ENRC. In fact, in addition to the single-actor direct infringement claim against ENRC, Plaintiff also asserts a joint-direct infringement claim against ENRC, Toll Bros., TWT and First Environment, collectively. In doing so, Plaintiff frankly explains that ENRC was just a junior member of the team that carried out the allegedly infringing activities:

> Defendants Toll Bros., TWT, and First Environment worked together to develop remediation and other development plants, to hire subcontractors and other engineering firms to assist with various tasks at Apple Ridge and High Mountain, and directed and/or controlled…ENRC in performing soil remediation methods that violate one or more claims of the '105 patent.

PAC at ¶ 57. As Plaintiff has clearly stated that Toll Bros., TWT, First Environment, and ENRC all worked together to jointly infringe the '105 patent, a single-actor direct infringement claim that does not adequately allege an alternative theory of liability cannot state a claim against ENRC. In cases such as this one, where a plaintiff's "own theory of infringement…require[s] multiple actors and a divided infringement analysis," dismissal of a single-actor direct infringement claim is appropriate. *Deep9 Corp. v. Barnes & Noble, Inc*., No. 11-0035, 2012 WL 4336726, at *8 (W.D. Wash. Sept. 21, 2012), *aff'd*, 504 F. App'x 923 (Fed. Cir. 2013). Because, as plead, the claims here require the work of joint infringers, Plaintiff's single-actor direct infringement claim against ENRC, alone, is dismissed.

### B. Joint-Direct Infringement against Toll Bros., TWT, First Environment, and ENRC

Plaintiff also asserts a claim for joint-direct infringement against all Defendants. As already explained, joint-direct infringement claims require a plaintiff to adequately plead that various parties perform all of the claimed steps; and one party exercises the requisite "direction or control," such that performance of every step is attributable to the controlling party. *See Desenberg,* 392 Fed.Appx. at 871; *see also NTP, Inc. v. Research In Motion, Ltd.,* 418 F.3d 1282, 1318 (Fed. Cir. 2005) ("A method or process consists of one or more operative steps, and, accordingly, '[i]t is well established that a patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized.' ") (quoting *Roberts Dairy Co. v. United States,* 530 F.2d 1342, 1354 (Ct. Cl. 1976)). The Federal Circuit has expanded on this "direction or control" test, allowing joint-direct

infringement claims to proceed where "the actors form a joint enterprise." *Akamai*, 797 F.3d at 1022.

The "control or direction" standard is "satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method." *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1330 (Fed. Cir. 2008) (citation omitted). If a plaintiff's allegations are lacking in this regard, the court will not "unilaterally restructure the claim or the standards for joint infringement to remedy [ ] ill-conceived claims" requiring multiple parties to perform different acts within one claim. *BMC Res.,* 498 F.3d at 1381 (citation omitted). Accordingly, the "direction or control" test requires the controlling party to be, in effect, the "mastermind" of the entire process. *Id.* At the other end of this multi-party spectrum, mere "arms-length cooperation" will not give rise to a claim for joint-direct infringement. *Muniauction,* 532 F.3d at 1329.

In the present matter, Defendants contend that the allegations of direction and control are "conclusory," arguing that they merely parrot the elements of the cause of action, without providing any factual support. According to Plaintiff, the Complaint does include sufficient non-conclusory allegations in this regard, noting, for example, that Toll Bros. "routinely directed and controlled soil remediation projects" and, in this case, "modified the blending plan" at the sites.[8] Plaintiff's

---

[8] Plaintiff also includes a claim chart that purports to detail the elements its patent claims for the '105 patent. However, nothing in the chart has any bearing on

argument is misplaced, however. As an initial matter, the contractual relationship between Toll Bros. and the remaining defendants is not sufficient, by itself, to state a claim for joint-direct infringement: the test for direction and control is analogous to the test for vicarious liability, and a contracting party is not vicariously liable for the actions of an independent contractor unless that party controls the details of the independent contractor's work to such an extent that the contractor cannot perform the work as he chooses. *Indian Harbor Ins. Co. v. Valley Forge Ins. Group,* 535 F.3d 359, 364–65 (5th Cir. 2008) (citation omitted); *O'Keefe v. Sprout-Bauer, Inc.*, 970 F.2d 1244, 1250, 1251 (3d Cir. 1992) ("The general rule in New Jersey, as in most jurisdictions, is that an owner who hires an independent contractor is not liable for the negligence of that contractor and any harm resulting therefrom."). Moreover, the existence of a contractual relationship may, in some instances, be suggestive of one party's control and direction, but the necessary level of control "'requires more than a general right to order work stopped or resumed, to inspect its process or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations....'" *Two-Way Media.*, 2015 WL 2375805, at *5 (quoting *Emtel, Inc. v. Lipidlabs, Inc.*, 583 F. Supp. 2d 811, 837 (S.D. Tex. 2008)). Here, the PAC is entirely devoid of allegations of Toll Bros. doing something "more" to control the work of its contractors and sub-

---

whether Toll Bros. "directed and controlled" all steps of the patent. *See* ECF No. 41-7 at 27-31.

contractors: for instance, alleging that Toll Bros. modified the blending plan does not indicate that they "controlled" this aspect of the contractors' work.

But even more damaging to Plaintiff's theory is that the PAC is explicit that Toll Bros. did *not* exercise direction or control over every step of the of the '105 patent. First, as previously noted, Plaintiff alleges that Toll Bros., TWT, and First Environment "worked together" in overseeing the soil remediation efforts, and, jointly, directed and controlled ENRC. *See* PAC at ¶ 57. Further, Plaintiff elsewhere alleges that Toll Bros. hired TWT to serve as an LSRP, and it was TWT, not Toll Bros., that was responsible for "overseeing and directing soil remediation activities at Apple Ridge and High Mountain." PAC at ¶ 35. Thus, according to the PAC, Toll Bros., TWT and First Environment—and not Toll Bros. alone—all retained some level of joint authority over the project; Plaintiff's own allegations, therefore, belie its argument that Toll Bros. was the "mastermind" responsible for every step of the process.

Nor has Plaintiff adequately alleged its joint-direct infringement claim through the second method endorsed by the Federal Circuit, the existence of a joint enterprise. A joint enterprise requires the existence of four elements:

> (1) an agreement, express or implied, among the members of the group;
>
> (2) a common purpose to be carried out by the group;
>
> (3) a community of pecuniary interest in that purpose, among the members; and
>
> (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

*Akamai*, 797 F.3d at 1023 (citing Restatement (Second) of Torts § 491 cmt. C). Plaintiff argues that a joint enterprise exists here, because Defendants "entered into express or implied agreements to remediate the Toll Bros. properties at Apple Ridge and High Mountain, that they have 'a common purpose' and 'a community of pecuniary interest in that purpose,' and all parties participate in the enterprise." ECF No. 53 at 11. Even accepting all of these conclusory representations as true, however, Plaintiff has not alleged that all Defendants had "an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Akamai*, 797 F.3d at 1023. The Complaint is clear that not all of the Defendants had equal control over the project, alleging that while Toll Bros., TWT and First Environment were responsible for "overseeing and directing soil remediation activities at Apple Ridge and High Mountain," ENRC had no such oversight authority. PAC. at ¶ 57.

It is true, as Plaintiff points out, that the Federal Circuit has noted that "[a] party cannot avoid infringement…simply by contracting out steps of a patented process to another entity…. It would be unfair indeed for the mastermind in such situations to escape liability." *BMC Res.,* 498 F.3d at 1381 (citation omitted). Yet, as the court in that same case also observed, and the Supreme Court later endorsed, this "control or direction" standard "may in some circumstances allow parties to enter into arms-length agreements to avoid infringement. Nonetheless, this concern does not outweigh concerns over expanding the rules governing direct infringement .... [and] can usually be offset by proper claim drafting .... [by] structur[ing] a claim to capture infringement by a single party." *Id.*; *see also Limelight Networks, Inc. v.*

*Akamai Techs., Inc.*, 572 U.S. 915, 926 (2014) (remarking that allowing for infringement when a single party is not responsible for every step of a process "would result in its own serious and problematic consequences, namely, creating…some free-floating concept of 'infringement' both untethered to the statutory text and difficult for the lower courts to apply consistently"). And indeed, courts have not allowed any such policy concerns to override the requirement that a plaintiff must satisfy the "control or direction" and/or "joint enterprise" test in order to survive a motion to dismiss a joint-direct infringement claim. *See Desenberg,* 392 Fed.Appx. at 871 (affirming the district court's decision to grant a motion to dismiss because plaintiff failed to allege that defendant acted as a "mastermind" controlling or directing the actions of third party users); *Two-Way Media Ltd.*, 2015 WL 2375805, at *6-7 (recommending dismissal based on plaintiff's "unsupported" propositions of direction or control); *Selex Commc'ns, Inc. v. Google Inc.*, No. 09-2927, 2012 WL 1681824, at *5 (N.D. Ga. May 11, 2012) (dismissing joint infringement claim due to lack of allegations that defendants "exercise control over all steps of the patented method"); *Friday Grp. v. Ticketmaster*, No. 08-01203, 2008 WL 5233078, at *3 (E.D. Mo. Dec. 12, 2008) (dismissing infringement claim because "Plaintiff has not alleged that a single defendant practiced each and every element or that any defendant would be liable for joint infringement"); *Global Patent Holdings, LLC v. Panthers BRHC LLC,* 586 F.Supp.2d 1331, 1335 (S.D. Fla. 2008) (granting a motion to dismiss because plaintiff failed to allege that defendant exerted sufficient "control or direction" over third party users). Thus, Plaintiff's

claim for joint-direct infringement against Toll Bros., TWT, First Environment, and ENRC is dismissed.

### C. Induced Infringement Against Toll Bros., TWT, and First Environment

Finally, Plaintiff asserts claims for infringement by inducement against Toll Bros., TWT and First Environment. The induced infringement provision of the Patent Act, 35 U.S.C. § 271(b), provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." However, "[l]iability for inducement must be predicated on direct infringement…inducement liability may arise 'if, but only if, [there is] ... direct infringement.'" *Limelight Networks*, 572 U.S. at 921 (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 341 (1961) (emphasis deleted)). As the Federal Circuit has explained, "[t]he reason for that rule is simple: There is no such thing as attempted patent infringement, so if there is no infringement, there can be no indirect liability for infringement." *Akamai Techs., Inc. v. Limelight Networks, Inc*., 692 F.3d 1301, 1308 (Fed. Cir. 2012). Thus, because Plaintiff has not sufficiently alleged direct infringement against ENRC or any other entity, its induced infringement claims also cannot lie.

### V. Conclusion

In light of the foregoing, CBA's Motion for Leave to Amend the Complaint, as set forth in the PAC, is DENIED, Defendants' Motion to Dismiss is GRANTED, and all claims are DISMISSED without prejudice. Plaintiff is given leave to amend its Complaint consistent with this Opinion within 30 days from the date of the Order accompanying this Opinion.

DATED:  July 31, 2019                    /s/ Freda L. Wolfson
                                         Freda L. Wolfson
                                         U.S. Chief District Judge